**MARJAK, INC. d/b/a Video Unlimited, Plaintiff,**

v.

**Joe COWLING, Mayor of the City of Stamps, in his individual and official capacity; Martin Herman, Buster Brazell, Curtis Jones, B.T. Owen, Thurman Teague, and Frank Scroggins, City Council Members of the City of Stamps, in their individual and official capacities; City of Stamps, Arkansas; and Lynn Robertson, Defendants.**

No. TX–C–85–4050.

United States District Court,
W.D. Arkansas,
Texarkana Division.

Aug. 12, 1985.

John Wesley Hall, Jr., Little Rock, Ark., for plaintiff.

Winston Bryant, North Little Rock, Ark., for defendant City of Stamps.

Mary McKinnon, El Dorado, Ark., for individual defendant Lynn Robertson.

## MEMORANDUM OPINION

ROY, District Judge.

On December 12, 1983, the City Council of Defendant City of Stamps, Arkansas, adopted Ordinance No. 323, entitled "An ordinance prohibiting the sale of obscene literature within the City of Stamps, Arkansas, setting penalties therefore and other purposes." The ordinance provides, in pertinent part:

Section 1: Hereafter, the sale, offer for sale, distribution, attempted distribution or public exhibition of obscene materials shall be a misdemeanor.

Section 2: Any person, upon conviction of a violation of the provisions of Section 1 herein, shall be subject to a fine of not less than One Hundred Dollars ($100.00) and not more than One Thousand Dollars ($1,000.00), or a term of imprisonment for not less than thirty (30) days nor more than six (6) months, or both such fine and imprisonment.

Section 3: Definitions—the following words, terms and phrases used in this ordinance shall, for the purposes of this ordinance, have the meanings respectively ascribed to them in this section:

(a) "Obscene" means that to the average person, applying contemporary standards, the dominant theme of the material taken as a whole appeals to prurient interest.

(b) "Material" means any book, pamphlet, magazine, periodical, newspaper, picture magazine, comic book, novel, film, videotape or other printed, written or recorded matter. It does not include written, printed or recorded material used by or in any recognized religious, scientific or education institution.

On March 11, 1985, Plaintiff opened a store in the City of Stamps for the rental and sale of movies on video cassettes to the public. The store was visited by Defendant Robertson on April 4 or April 5, 1985, at which time he inspected some videos and their containers. Defendant Robertson discussed Ordinance No. 323 with the store

manager and left a copy of it with her. Defendant Robertson went back to the store on April 8, 1985, and asked if certain kinds of tapes would be removed from the shelves. When advised that no tapes would be removed, he informed the manager that he would take further action.

Defendant Robertson rented a copy of "Girls of Penthouse" and presented brief portions of it to the City Council for their review at their regular meeting on that same date. Defendant Robertson also mentioned 21 other titles as being either obscene or questionable. Subsequently, the City Council voted five to zero, with Defendant Scroggins abstaining, to direct City Attorney Michael Surguine to write to Plaintiff's attorney advising him that those tapes should not be rented or sold.

By letter dated April 9, 1985, Mr. Surguine informed Plaintiff's attorney that "the council voted 5–0, with one abstaining, to notify your client that the obscene videos be removed within 30 days. This letter will serve as such notice." The letter set out the titles of the 22 tapes found to be objectionable by Defendant Robertson.

On April 22, 1985, Plaintiff instituted this action seeking declaratory and injunctive relief and compensatory and punitive damages. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343(3) and (4), the jurisdictional counterpart to 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202.

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment, to which all Defendants have responded. Plaintiff requests that the ordinance be declared unenforceable on the dual grounds that it is unconstitutional on its face due to vagueness and that it is preempted by Ark.Stat.Ann. § 41–3585–3585.8. (Supp.1983).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All facts must be viewed in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences to be drawn from the facts. *Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620 (8th Cir.1981). It must not be granted unless the moving party "has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Bellflower v. Pennise,* 548 F.2d 776, 777 (8th Cir.1977).

On consideration of the admitted facts in the pleadings and the briefs and memoranda of counsel, the Court finds that it should not abstain from consideration of the case, that Plaintiff has standing to challenge the ordinance, that Plaintiff's cause presents a justiciable controversy, and that the ordinance is hopelessly vague and overbroad and therefore unconstitutional. An order will be entered in accordance with this Opinion and Plaintiff allowed to proceed with its claim for damages from Defendants.

## I. ABSTENTION

Defendants contend that this Court should refrain from ruling upon the constitutionality of the ordinance under the abstention doctrine set out in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and further developed in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). These cases delineate the following factors to which the federal courts must look in determining whether abstention is appropriate: first: whether the case presents a constitutional issue which might be mooted by a state court determination on pertinent state law; second, whether the suit touches upon a sensitive area of state policy the import of which transcends the outcome of the instant case; and third, whether obstruc-

tion or restraint of state proceedings would be without substantial justification.[1]

These factors must be viewed in the light that the federal district courts should be reluctant to abstain from cases properly before them.

The doctrine of absention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order of the parties to repair to state court would clearly serve an important countervailing interest.

*County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959). "That First Amendment rights of expression are at stake makes abstention all the more inappropriate." *Spokane Arcades, Inc. v. Brockett*, 631 F.2d 135, 137 (9th Cir.1980).

Applying the *Pullman* considerations to the case at bar, we must decide whether a decision of this Court as to the constitutionality of the ordinance might be mooted or otherwise affected by a different, yet equally lawful, holding of the state courts. "An important factor in the Court's consideration of abstention under the *Pullman* doctrine is the relative clarity or ambiguity of the state law in question." *Wild Cinemas of Little Rock, Inc. v. Bentley*, 499 F.Supp. 655, 659 (E.D.Ark.1980). In that case, the issue was overbreadth, not vagueness, so the Court chose not to abstain. However, although vagueness in a particular statute may increase the possibility of a different interpretation by the state courts, "the dispositive issue is whether the procedures are capable of a construction that could avoid the constitutional issues." *Spokane Arcades, Inc., supra*, 631 F.2d at 137. No saving construction is possible in the instant case, so abstention based on this factor would be inappropriate.

Nor does the second *Pullman* consideration require abstention here. Certainly, the definition and regulation of obscenity is of significant concern to the State of Arkansas, as is the protection of the First Amendment rights of its citizens. However, through its enactment of Ark.Stat. Ann. § 41–3585–3585.8, the State has established clear guidelines pertaining to obscenity and effectively resolved these issues. As the State has fully addressed the problem, it cannot be said that our decision in this action will in any way interfere with the formulation or implementation of state policy.

Finally, as there is not now and never has been any criminal proceeding under the ordinance, the third factor is simply not applicable here. Accordingly, the Court finds that abstention would be inappropriate in this matter.

## II. STANDING AND RIPENESS

■ Defendants also contend that, as Plaintiff has not been prosecuted under the ordinance, Plaintiff lacks proper standing to mount a challenge to it and, therefore, Plaintiff's cause should be dismissed on the grounds that it does not present an actual case or controversy to the Court.

In *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), the Supreme Court identified the following requirements that a plaintiff must meet in order to have standing: first, plaintiff must allege an actual or threatened injury as a result of conduct of the defendant; second, the injury alleged by the plaintiff must be fairly traceable to the action of the defendant that is challenged in the lawsuit; and, third, the injury alleged by plaintiff must be likely to be redressed by a favorable decision of the court.

Clearly, sufficient facts have been articulated by Plaintiff, and admitted by Defend-

---

1. The Supreme Court has also noted the requirement of ascertaining whether a "concrete case or controversy" is present when considering abstention. *Moore v. Sims*, 424 U.S. at 428, 99 S.Ct. at 2380. This factor will be discussed under "ripeness."

ants, to satisfy all the requirements. The letter of April 9, 1985, from City Attorney Surguine to Plaintiff's attorney was a thinly-veiled threat of prosecution under the ordinance if the 22 named tapes were not removed from Plaintiff's shelves within 30 days. Plaintiff claims the threat of prosecution has not only infringed upon its First Amendment rights, but it has also spawned unfavorable publicity which has caused Plaintiff to suffer financial losses. Certainly, the relief sought herein would redress Plaintiff's alleged injuries. Plaintiff has sufficient standing to bring this cause.

Defendants' argument that there has not been a sufficiently serious threat of enforcement of the ordinance also raises a question as to the "ripeness" of Plaintiff's claim—that is, whether it presents an actual case or controversy to the Court as required by Article III of the Constitution. The Court finds that the letter of April 9, 1985, constituted a sufficient threat of enforcement and prosecution to make this case ripe for adjudication. As noted in *Wild Cinemas, supra,* 499 F.Supp. at 660, "We think it beyond question that plaintiff need not subject itself to prosecution or arrest in order to present a justiciable controversy."

## III. VAGUENESS

■ The long-running struggle of our courts to settle the persistent problem of obscenity is well-known to even the most casual observers of our legal system. The Court sees little value in undertaking yet another lengthy analysis of the development of our obscenity law. Suffice it to say that the standard presently applicable is that which was enunciated in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Under the three-prong test established in *Miller,* a finding of obscenity must be predicated upon affirmative answers to the following questions:

(a) whether the average person, applying contemporary community standards would find the work, taken as a whole, appeals to prurient interest;

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.

The ordinance in question fails to satisfy two of the three components of the tripartite test of *Miller,* for it states no requirement that the material depict any kind of sexual conduct or that the material must lack any serious literary, artistic, political, or scientific value. All the ordinance requires is that the material "appeals to prurient interest." No definition of "prurient interest" is included in the ordinance; however, the term has been discussed or defined by a number of courts. *See e.g., Roth v. United States,* 354 U.S. 476, 487 n. 20, 77 S.Ct. 1304, 1310 n. 20, 1 L.Ed.2d 1498 (1957); *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020, 1026 (5th Cir.1981); *cert. denied,* 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453 (1982). Regardless of the precise definition ascribed to "prurient interest," as drafted the ordinance is susceptible to an interpretation that could subject one to criminal prosecution for the mere depiction of nude, or even partially-nude, persons, or fully-clothed persons striking provocative poses.

The Supreme Court has noted:

Under the holdings announced today, no one will be subjected to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive "hard core" sexual conduct specifically defined by the regulating state law, as written or construed.

*Miller, supra,* 413 U.S. at 27, 93 S.Ct. at 2616. It has also been stated that "nudity alone is not enough to make material legally obscene under the *Miller* standards." *Jenkins v. Georgia,* 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974). Although some statutes omitting one or two details of the *Miller* tests have been given a saving construction, *see, e.g., Red Bluff Drive-In, Inc., supra,* the omission

from the ordinance of the requirement that the material depict "hard core" sexual conduct renders it too vague and overbroad to pass constitutional muster. It would seem impossible for one to know what the limits of expression are under the ordinance. To allow this ordinance to stand could expose many to prosecution for the sale or exhibition of otherwise protected materials. At the very least, it would have a significant "chilling effect" on the exercise of certain First Amendment rights within the City of Stamps, Arkansas.

"[A] statute which sweeps within its ambit a broad range of expression protected by the First Amendment should be struck down on its face." *United States v. Grace,* 461 U.S. 171, 187, 103 S.Ct. 1702, 1712, 75 L.Ed.2d 736 (1983). To the extent that the ordinance fails to adequately set out ascertainable standards of permissible expression, it is too vague; and, to the extent that it criminalizes the sale, distribution or exhibition of protected materials, the ordinance is overbroad. Accordingly, under precedents heretofore established by the United States Supreme Court and the Eighth Circuit Court of Appeals, the Court is compelled to find that Ordinance No. 323 of the City of Stamps, Arkansas, is unconstitutional and therefore unenforceable.

In light of its finding that the ordinance is unconstitutional, the Court need not address Plaintiff's contention that the ordinance is pre-empted by Ark.Stat.Ann. § 41–3585–3585.8. An order shall be entered in accordance with this Opinion and Plaintiff's cause shall proceed upon its claim for damages.