645 F.2d 735
 Ronald W. CHASE, d/b/a Night Moves Tavern, Plaintiff/Appellee,
v.
Jack DAVELAAR, Coroner and Acting Sheriff of Pierce County,
Washington, and Don Herron, Prosecuting Attorney
of Pierce County, Washington,
Defendants/Appellants.
 No. 79-4471.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1981.
Decided May 18, 1981.
 
 Joseph F. Quinn, Deputy Pros. Atty., Tacoma, Wash., for defendants/appellants.
 Victor V. Hoff, Seattle, Wash., for plaintiff/appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before ANDERSON, PREGERSON and CANBY, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 The acting sheriff and the prosecuting attorney of Pierce County, Washington appeal from a judgment holding Pierce County's prohibition of topless entertainment unconstitutional on its face for overbreadth. For the reasons stated in this opinion, we affirm.
 
 
 2
 Chase owns and operates the Night Moves Tavern in Pierce County, which had featured topless dancing before May 8, 1979. On that date the county's Board of Commissioners enacted Resolution 21436, which prohibited topless entertainment in all non-theatrical establishments selling food or beverages ("including, but not limited to, alcoholic beverages") for consumption on the premises.[1] Chase stopped presenting topless dancing, but commenced this lawsuit on June 12, 1979, seeking declaratory and injunctive relief under 42 U.S.C. § 1983. In addition, he moved for a preliminary injunction to prevent appellants from enforcing Resolution 21436 against him during the pendency of this action.
 
 
 3
 On July 13, 1979, the district court ordered the trial on the merits advanced and consolidated with the hearing on the preliminary injunction, as authorized by Fed.R.Civ.P. 65(a)(2). The trial was held four days later, and on July 19 the court entered its findings of fact and conclusions of law and a judgment holding Resolution 21436 "unconstitutionally overbroad on its face, under the First and Fourteenth Amendments." This appeal followed.
 
 
 4
 Appellee based his challenge to Resolution 21436 on the doctrine of overbreadth, under which "a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." Village of Schaumberg v. Citizens for a Better Environment, 444 U.S. 620, 634, 100 S.Ct. 826, 835, 63 L.Ed.2d 73 (1980). Appellee assumed for the sake of argument that the county could constitutionally have banned topless dancing in establishments, like his, where liquor was sold.[2] But he argued that the resolution on its face applied to other kinds of establishments in which topless dancing could not constitutionally be prohibited and thus violated the principle that statutes punishing expressive conduct "must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." Gooding v. Wilson, 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408 (1972). A statute that violates this principle by substantially abridging protected expression is invalid on its face and cannot be enforced against anyone.
 
 
 5
 There can be no doubt that Resolution 21436 is overbroad. It bans the display of breasts in any place that serves food or beverages, alcoholic or not, that is not a "theater, concert hall or other similar establishment ... primarily devoted to theatrical performances" as defined in the resolution. This ban would apply not only to bars and taverns but to restaurants, cabarets, supper clubs, and to "a discotheque serving only soft drinks," as the Minnesota Supreme Court said of a city ordinance it struck down as overbroad. Koppinger v. City of Fairmont, 311 Minn. 186, 248 N.W.2d 708, 716 (1976). Moreover, the resolution would prevent the affected establishments from offering entertainment that is not obscene under current law, since nudity alone is not sufficient to make material legally obscene. Jenkins v. Georgia, 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974). Such non-obscene entertainment is protected by the First Amendment.[3] For example, a cabaret would be prohibited from presenting the musical "Hair," which contains a nude scene, although federal courts have held that show to be non-obscene. See Southeastern Promotions, Ltd. v. City of Mobile, 457 F.2d 340 (5th Cir. 1972); Southeastern Promotions, Ltd. v. City of Atlanta, 334 F.Supp. 634 (N.D.Ga.1971).[4]
 
 
 6
 Thus it seems clear that Resolution 21436 would prohibit instances of communicative activity protected by the First Amendment; therefore, the resolution is overbroad.
 
 
 7
 Appellants contend that it was error to apply the overbreadth doctrine in this case because the topless dancing at the Night Moves Tavern was "commercial speech," to which that doctrine does not apply. Bates v. State Bar, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977). Appellants are mistaken, however, in characterizing the topless dancing as "commercial speech." The Supreme Court has described commercial speech as "speech which 'does no more than propose a commercial transaction,' " Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 762, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976), or an "expression related solely to the economic interests of the speaker and its audience," Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 561, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980). These descriptions do not apply to topless barroom dancing. Whatever may be the attitude or emotion conveyed to the audience whether an esthetic appreciation of the human body or a "prurient interest" it is not one "related solely to the economic interests of the ... audience," nor does topless dancing propose a commercial transaction to the viewers. Of course, topless dancing is a form of expression presented for pecuniary gain. But the same is true of books, newspapers, and motion pictures, which are not on that account classified as "commercial speech."[5]
 
 
 8
 Simply because Resolution 21436 is overbroad does not mean that it must automatically be held invalid. The Supreme Court has held that "particularly where conduct and not merely speech is involved, ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep" to justify invalidating the statute. Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). We believe that the overbreadth of Resolution 21436 is sufficiently "substantial" to warrant the statute's invalidation.
 
 
 9
 Had Resolution 21436 applied only to establishments that sell alcoholic beverages, it would apparently have been constitutional, as mentioned earlier.[6] Moreover, the rationale that appellants have advanced for the resolution suggests no reason why the scope of the resolution was not so limited. According to appellants, the resolution was intended not as an anti-obscenity measure[7] but as a means of alleviating the disproportionate drain on county law enforcement that stemmed from the increased prostitution, gambling, and other criminal conduct associated with topless dancing establishments. Yet all of the problems appellants discuss arose exclusively at bars featuring topless dancing.[8] Thus it appears that the interests that motivated the passage of Resolution 21436 could have been served just as well by a more narrowly drawn statute applicable only to liquor-selling establishments.[9]
 
 
 10
 Because the resolution encompasses so many more establishments than the topless bars that allegedly generated the need for the statute, a finding of substantial overbreadth is warranted, especially in view of the frequency with which the Supreme Court has emphasized the need for "narrow specificity" in regulations trenching on First Amendment freedoms.[10] Moreover, the Second Circuit has invalidated, on overbreadth grounds, an ordinance banning topless dancing whose scope was essentially identical to that of Resolution 21436. Salem Inn, Inc. v. Frank, 522 F.2d 1045 (2d Cir. 1975).[11] Given these factors, the mere fact that the resolution arguably applies to "conduct" rather than "speech" is not sufficient to persuade us that the overbreadth problem is insubstantial.[12]
 
 
 11
 Appellants argue that Resolution 21436 should be held constitutional because it satisfies the four-part test of United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).[13] O'Brien is of doubtful relevance here, however. The four-part test it enunciated was devised to deal with O'Brien's argument that the statute penalizing draft-card burning was "unconstitutional as applied to him because his act of burning his registration certificate was protected 'symbolic speech' within the First Amendment." 391 U.S. at 376, 88 S.Ct. at 1678. The case at bar is quite different. First, appellee is not challenging Resolution 21436 as applied to him, but contends it is drafted so broadly that it will strike at the protected speech of other persons. Second, the kind of "symbolic speech" issue present in O'Brien is absent here. Unlike the statute challenged in O'Brien, Resolution 21436 is not attacked for implicating conduct, generally considered non-expressive, which the actor asserts to be communicative. Rather, the infirmity of the resolution arises because its overbreadth would prevent the establishments it covers from presenting various plays, musicals, ballets, and other items ordinarily regarded as expressive.[14]
 
 
 12
 Moreover, even if it is proper to apply the O'Brien test here, our result would be unchanged. As already shown, the county's professed law enforcement interest could have been served by a regulation applying only to places where liquor is sold. Resolution 21436 therefore restricts first amendment freedoms to a greater degree than is essential to further the county's constitutionally permissible goals. It thus fails to meet the final requirement of the O'Brien test.
 
 
 13
 Because we find that Resolution 21436 is substantially overbroad, we affirm the judgment of the district court that the resolution is unconstitutional on its face. AFFIRMED.
 
 
 
 [1]
 The resolution exempted any "theater, concert hall or other similar establishment which is primarily devoted to theatrical performances." This phrase was defined to apply to:
 a building, playhouse, room, hall or other place having seats so arranged that a body of spectators can have an unobstructed view of the stage, upon which theatrical or vaudeville performances or similar forms of artistic expression are presented, and where such performances are not incidental to the promoting of the sale of food, drink or other merchandise.
 The resolution made it a misdemeanor for any waiter, waitress or entertainer in a covered establishment to expose "any portion of the breast at or below the areola thereof."
 
 
 [2]
 This indeed seems to follow from California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), which held that regulations of the California Department of Alcoholic Beverage Control banning explicitly sexual live entertainment and films in bars were constitutional by virtue of the Twenty-First Amendment's grant to the states of plenary power to regulate liquor sales
 
 
 [3]
 The Supreme Court has made it clear that "mere entertainment" is protected speech. Stanley v. Georgia, 394 U.S. 557, 566, 89 S.Ct. 1243, 1249, 22 L.Ed.2d 542 (1969)
 
 
 [4]
 Judicial opinions treating statutes similar to Resolution 21436 enumerate other protected activities that could be prohibited by such a statute, including operas, educational exhibitions, and African and other ethnic dances. See People v. Nixon, 86 Misc.2d 564, 382 N.Y.S.2d 909, 912 (Yonkers City Ct.), aff'd, 88 Misc.2d 913, 390 N.Y.S.2d 518 (Sup.Ct.1976); Crownover v. Musick, 9 Cal.3d 405, 437, 107 Cal.Rptr. 681, 702, 509 P.2d 497, 518 (1973) (Tobriner, J., dissenting), cert. denied sub nom. Reynolds v. City of Sacramento, 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed.2d 489 (1974)
 
 
 [5]
 See New York Times Co. v. Sullivan, 376 U.S. 254, 266, 84 S.Ct. 710, 718, 11 L.Ed.2d 686 (1964) (paid editorial advertisement published by newspaper was not commercial speech). See also Village of Schaumberg v. Citizens for a Better Environment, 444 U.S. 620, 632, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980) (charitable solicitation is not commercial speech because it "does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services")
 
 
 [6]
 See note 2 supra
 
 
 [7]
 Resolution 21436 would have been patently overbroad if intended as an obscenity statute, since mere nudity is not per se obscene, Jenkins v. Georgia, 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974), even for juveniles. Erznoznick v. City of Jacksonville, 422 U.S. 205, 213, 95 S.Ct. 2268, 2274, 45 L.Ed.2d 125 (1975)
 
 
 [8]
 Thus a letter from Undersheriff Roy Durham to the county commissioners supporting enactment of Resolution 21436 indicated that all four of the establishments in unincorporated county areas that featured topless dancing also served liquor. Commissioner Stortini, in remarks advocating the resolution, spoke of "topless dancing bars" as the target. And appellants themselves dwell on comparisons between the criminal conduct associated with topless establishments and that characterizing "ordinary taverns."
 
 
 [9]
 We note that the Supreme Court has on a number of occasions stated that regulations infringing constitutional rights must fall if less restrictive alternatives are available. See, e. g., Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 185, 99 S.Ct. 983, 991, 59 L.Ed.2d 230 (1979); Kusper v. Pontikes, 414 U.S. 51, 58-59, 94 S.Ct. 303, 308-309, 38 L.Ed.2d 260 (1973)
 
 
 [10]
 See, e. g., Central Hudson Gas & Electric Corp. v. Public Utilities Comm'n, 447 U.S. 557, 565, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980) ("First Amendment mandates that speech restrictions be 'narrowly drawn.' "); Hynes v. Mayor and Council of Borough of Oradell, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976) ("(I)n the First Amendment area 'government may regulate only with narrow specificity.' "); Grayned v. City of Rockford, 408 U.S. 104, 116-17, 92 S.Ct. 2294, 2303-04, 33 L.Ed.2d 222 (1972) (requiring that regulations of communication "be narrowly tailored to further the State's legitimate interest.")
 
 
 [11]
 The ordinance in Frank banned topless dancing in cabarets, bars, dance halls, discotheques, restaurants, and coffee shops. The Second Circuit faulted this ordinance in part because it applied "to places not serving alcoholic beverages such as coffee shops, restaurants, dance halls and discotheques." 522 F.2d at 1047 (footnote omitted). The same criticism applies to Resolution 21436
 
 
 [12]
 We are hesitant to rely uncritically on the speech/conduct dichotomy. In part, our hesitancy arises from the conceptual weakness of the distinction. "Speech" communication of ideas or attitudes is itself a form of "conduct." See Ely, Flag Desecration: A Case Study in the Roles of Categorization and Balancing in First Amendment Analysis, 88 Harv.L.Rev. 1482, 1495 (1975) In part, we are hesitant because what would ordinarily be called "speech" may not be "speech" for First Amendment purposes e. g., obscenity, Miller v. California, 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973) whereas what would ordinarily be classified as "conduct" may well be treated as protected "speech" e. g., wearing a protest armband, Tinker v. Des Moines School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Finally, we are troubled by the special dangers involved in applying the speech/conduct distinction to theatrical productions or stage performances. See Southeastern Promotions, Ltd. v. City of Atlanta, 334 F.Supp. 634, 639 (N.D.Ga.1971)
 
 
 [13]
 The O'Brien Court, considering a statute prohibiting draft-card burning, said:
 This Court has held that when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms .... (W)e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
 391 U.S. at 376-77, 88 S.Ct. at 1678-79.
 
 
 [14]
 A narrow reading of O'Brien is particularly appropriate given the Supreme Court's own reluctance to employ the O'Brien test since it was first stated. In no subsequent opinion did the Court base its decision on that test. Indeed, the Court refrained from applying the O'Brien test even when confronted with genuine "symbolic speech" claims. See Spence v. Washington, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (per curiam) flag displayed with peace symbol affixed to protest invasion of Cambodia and killings at Kent State); Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969) (flag burned to protest shooting of civil rights leader); Tinker v. Des Moines School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (black armbands worn to protest Vietnam War)